JAMES EDWARD JOHNSON ET AL. *v.*
CHRYSLER CREDIT CORPORATION

[No. 789, September Term, 1974.]

\* \* \*

GIRARD FORCELLA, JR. ET AL. *v.* FORD
MOTOR CREDIT COMPANY

[No. 790, September Term, 1974.]

*Decided May 6, 1975.*

The cause was argued before ORTH, C. J., and GILBERT and LOWE, JJ.

*Robert S. Sherman* and *Erwin Frenkil* for appellants.

No. 789, *Fenton L. Martin,* with whom were *Roger A. Clapp* and *Clapp, Somerville, Black & Honemann* on the brief, for appellee Chrysler Credit Corporation.

No. 790, *Lewis A. Noonberg,* with whom were *Paul V. Niemeyer, David F. Tufaro* and *Piper & Marbury* on the brief, for appellee Ford Motor Credit Company.

LOWE, J., delivered the opinion of the Court.

As part of the Retail Installment Sales Act of 1941,[1] the Legislature prohibited holders of such agreements from including in them what has come to be known as an "insecure" clause. Md. Code, Art. 83, § 130 (d) reads:

"§ **130. Provisions forbidden in instruments.**

No seller, sales finance company, or holder shall at any time take or receive any instrument from a buyer, or from any surety or guarantor for the buyer which contains:

. . .

(d) Any provision for repossession of the goods or for the acceleration of the time when any part or all of the time balance becomes payable, if the condition of such repossession or acceleration is in substance that the seller or holder deems himself to be insecure;"

To ensure compliance therewith, the Legislature created an unusual civil penalty in addition to criminal liability for knowing violators of the Act. Art. 83, § 149 (c) and § 150. It

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, August 1, 1975.

1. Laws of Md., 1941, Ch. 851 now codified as Md. Code, Art. 83, §§ 128 through 153, Subtitle "Retail Installment Sales."

provides for the forfeiture of "any finance, delinquency or collection charge" and as written in § 149 (b) reads:

"(b) *Forbidden provision in instrument renders same void.* — Whenever any instrument contains any provision prohibited by § 130, such provision shall be absolutely void, and any person taking such instrument in violation of § 130 shall not collect or receive any finance, delinquency or collection charge from the buyer in connection with the transaction to which such instrument relates."

Appellants James Edward Johnson, et al., No. 789, and Girard Forcella, Jr., et al., No. 790, sued Chrysler Credit Corporation, appellee in No. 789 and Ford Motor Credit Company, appellee in No. 790, alleging that the respective instruments held by them contained the prohibited "insecure" clause. Appellants do not allege that the clause has been exercised. Apparently deeply concerned over the plight of fellow victims, they brought this action on behalf of themselves and "a class of persons similarly situated" to recover damages of $70,000,000.00 against Chrysler and $120,000,000.00 against Ford. Appellees each demurred and filed motions for summary judgment primarily opposing the class actions. The demurrers were granted without leave to amend.

Appellants, who have the same counsel, argued their cases in concert. They raise six [1A] questions:

"1. Can the appellant maintain a class action as a matter of right?

---

[1A]. Appellant Forcella raised an additional question:

"7. Does the failure of the lower court to rule on appellants petition for injunctive relief require a remand by this court?"

The relief prayed thereunder was to restrain appellee Ford Motor Credit Company from "collecting any monies which it may claim in violation of the Maryland Retail Installment Sales Act, particularly Article 83, Sections 130 and 149 (b)." Our affirmance of the trial court's holding that appellants do not represent the members of the class relieves us from responding to appellant's seventh question. Additionally, any response would be a decision on the merits preliminarily, which Eisen v. Carlisle and Jacquelin, 417 U. S. 156, strongly discourages.

2. Does the Retail Installment Sales Act (Article 83, Sections 128-153 of the Maryland Code) provide for or contemplate only action for individual relief?

3. Do the appellants have to show damage to each unnamed member of the proposed class or any member of the proposed class before class action status can be granted?

4. Under Maryland Law, does a class exist in this case?

5. Would it be possible and/or practical to provide such notice as is consistent with all applicable Maryland Rules and justice to each potential member of the proposed class?

6. Is class action status the only and/or best remedy under the circumstances?"

Ample briefs and exhaustive arguments reflected a broad spectrum of approaches to class action cases by courts throughout the country. Though interesting and informative, most were helpful only as indicating the premature withering of a budding new proceeding.[2] We find the issue here hardly as involved nor nearly as complex as it was presented to be. The issue on appeal narrows itself to whether the trial judge abused the discretion afforded him in Md. Rule 209 b when he sustained both of appellees' demurrers.[3] The court found:

1. Appellants could not maintain the class suit as a matter of right.

2. There was no showing of damage to unnamed members from the exercise of the disputed clause.

3. Appellants had "not clearly shown that such a class of injured plaintiffs exists in this case as

**2.** "It appears that the initial enthusiasm for the Rule has been tempered by recognition of the practical problems inherent in its use." Abercrombe v. Tunis, Inc., 1972 Trade Cas. par. 74, 118 (S.D. Fla.).

**3.** The orders expressly reserve appellants' rights to proceed as individuals.

would justify granting class action status to them"; and

4. Even if such class exists, adequate notice to all members of the class would be neither possible nor practical.

## I and II

Appellants' first argument totally digresses from the question they ask.[4] The argument does no more than complain that, in appellants' view, the trial judge did not analyze the case in sufficient detail. They contrast the published opinion of Judge Marshall Levin in *Siegrist v. The Continental Insurance Company*, No. 134610 (Superior Court of Baltimore City, Nov. 10, 1972) in *Daily Record*, Nov. 27, 1972, at 2, col. 1. It would appear that appellants covet more the result reached in *Siegrist* than the commendable analysis it exhibits. *Siegrist* illustrates rather the care and precision necessary before *allowing* a class action [4A] — a procedure which takes from individuals the right to control their own cases and indeed, as here, may effect anomalous results.

While other jurisdictions have had numerous occasions to consider class action suits, we find a dearth of authority on the subject in Maryland. Only once have our appellate courts treated the question, and then only peripherally. *Hooks v. Comptroller*, 265 Md. 380. As slender a reed as it provides, we grasp whatever guidance we can find.

---

4. Appellants somewhat confusingly ask the question,

"1. Can the appellants maintain a class action as a matter of right?"

then follows the very next sentence:

"This threshold issue presents somewhat of a puzzle to the Appellants since both Appellants and Appellee have agreed in their briefs filed in the lower court that this action is not one of right but of discretion."

We join appellants' puzzlement since their argument is completely unrelated to the question.

4A. While complimenting the trial court's analysis procedurally we express no opinion as to the propriety of the result reached.

In *Hooks*, the Court of Appeals analyzed the statute which provided the basis for the claim, to determine whether the appellant had a right to utilize the class action device. The Court found that "while he may act in his own behalf, there is no warrant in the Act permitting him to advance a claim in behalf of others similarly situated." *Hooks*, 265 Md. at 383.

Further, we have examined the Retail Installment Sales Act as the Court of Appeals did the Retail Sales Tax Act, and we arrive at a similar conclusion. There is no language which expressly or impliedly suggests that the Legislature intended to provide class relief as a matter of right for violations of the Act. Since the class rule was not in effect when the statute was adopted we would be hard pressed to read Legislative intent as contemplating a procedure that did not exist.

## III, IV, V and VI

The Supreme Court has also recently imposed some limitations on class actions. *Eisen v. Carlisle & Jacquelin*, 417 U. S. 156, 40 L. Ed. 732. The Court's analysis is persuasive, but not binding since it treats class actions under Rule 23, F.R.C.P. rather than our own Md. Rule 209. Although the rules are not dissimilar, Federal Rule 23 goes into substantially more detail than does our own. Nevertheless, several of the problems the Supreme Court treated were considered by the trial judge below in the present case.

### Notice to Members of the Class

Appellants estimated in argument that in excess of 100,000 members of the class existed within the two suits filed. While seeming to admit their own inability to cope with the enormity of costs notice would entail, they suggest that "The trial judge could have ordered appellee[s] . . . to place the necessary funds in escrow to give the adequate notices . . . with the provision that same would be deducted from the share of those members who apply for and receive funds and credits from appellee."

In *Eisen* Mr. Justice Powell wrote:

"In the absence of any support under [the class rule] petitioner's effort to impose the cost of notice on respondents must fail. The usual rule is that a plaintiff must initially bear the cost of notice to the class. The exceptions cited by the [trial court] related to situations where a fiduciary duty preexisted between the plaintiff and defendant, as in a shareholder derivative suit. Where, as here, the relationship between the parties is truly adversarial, the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit."

## Preliminary Hearing

Appellants' argument that notice costs be borne initially by appellee points up other procedural difficulties with this case. To do what appellants ask would require a preliminary ruling on the merits, else how justify the pecuniary burden placed upon appellee. It would also be necessary to determine whether unnamed members of the class would be more harmed than helped, a determination which would likewise require some preliminary inquiry into the merits, to answer questions left unanswered by the Legislature:

a) How past interest would be computed and repaid;

b) Whether loans could be called in by note holders;

c) Whether appellees could be required to continue to extend loans without future compensation (due process); and

d) Depending on the answers to previous questions, whether many of the class would be reluctant to lose their financing in a tight money market or pay interest rates which may have risen since the original loan?

Appellants themselves contend that these are but a few of the many reasons why the trial judge should have held a preliminary hearing before ruling on the class question.

Again we agree with the Supreme Court, which could:

> ". . . find nothing in either the language or history of [the class rule] that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained.
>
> . . .
>
> Additionally, we might note that a preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials. The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant." *Eisen*, 417 U. S. at 177-178, 40 L. Ed. at 748-749.

We conclude as we commenced. The question before us is whether the trial court abused its discretion. We think it did not.

Although in some circumstances the class action may be an important public interest device, in others it contravenes the more traditional notions of an individual's jurisprudential rights. As a potential and perhaps unwilling litigant, an individual must assert affirmatively his right to be left alone, the very articulation of which reveals its incongruity. While we recognize the procedural vacuum a class suit may fill, we commend care in applying such relief, illustrated both by its meticulous grant in *Siegrist, supra,* and its denial here. Among those disenchanted with the

class procedure is the court which authored *Buford v. American Finance Co.,* 333 F. Supp. 1243 (N.D. Ga.).

*Judgments affirmed; costs to be paid by appellants.*