THE PEOPLE *ex rel.* John B. Standerfer, Collector,

*v.*

WILLIAM HAMILL.

*Filed at Mt. Vernon June 16, 1888.***

1. CONSTITUTIONAL LAW—*title of an act—requirements of the constitution of 1848—act of 1869 concerning subscription by counties to stock of St. Louis and Southeastern Railroad Company—diverting subscription from another company.* Section 20 of the act of March 10, 1869, entitled "An act to incorporate the St. Louis and Southeastern Railroad Company," which authorized certain counties through which the road was located, to subscribe to the capital stock of the company all or any part of any sums theretofore voted by the legal voters to another railway company, is void, as being in violation of section 23, article 3, of the constitution of 1848, which provided that "no private or local law which may be passed * * * shall embrace more than one subject, and that shall be expressed in the title."

2. That was a private or local act, and although the subscribing by counties, etc., to the capital stock of the corporation thereby created is germane to the object expressed in the title, the diversion to that corporation of a subscription theretofore authorized by a vote of the people to be made to a different corporation is a wholly different thing. That, it is to be presumed, would affect, adversely, the corporation from which the subscription voted was sought to be diverted, and was, therefore, clearly not germane to the title of the act.

3. MUNICIPAL BONDS—*issued without lawful authority, void.* It is the doctrine of this court that municipal bonds issued for stock in railroad corporations without authority of law, are void, no matter into whose hands they may come, and the collection of taxes levied to pay the interest on the same may be enjoined.

4. SAME—*donation in aid of railroads—voted prior to constitution of 1870.* Where a county donation of bonds in aid of a railway is properly authorized under laws existing prior to the adoption of the constitution of 1870, by a vote of the people, under such laws, the bonds of the county may be issued under such authority after that constitution took effect, and they will be binding on the county so issuing them.

5. MUNICIPAL INDEBTEDNESS—*constitutional limitation—upon what valuation or assessment to be based.* It is held in this case that it is the value of the taxable property of the county, to be ascertained by the

*This case has not appeared sooner in the Reports on account of an inadvertence in directing its publication.

"last assessment for State and county taxes previous to the incurring of" an indebtedness, that is, the assessment made by the local assessor, upon which the five per cent is to be computed which limits the power of the county to contract a debt, and not the equalized valuation as fixed by the State Board of Equalization. But this decision is over-ruled in the later case of *Culbertson et al.* v. *The City of Fulton et al.* 127 Ill. 30, where it is *held,* that it is the assessment as finally fixed by the State Board of Equalization that must govern, in determining the basis of the limitation of the power to create municipal indebtedness.

APPEAL from the County Court of Hamilton county; the Hon. JOHN C. EDWARDS, Judge, presiding.

Mr. GEORGE HUNT, Attorney General, and Mr. LEONIDAS WALKER, State's Attorney, for the appellant:

The charter of the St. Louis and Southeastern railway pro-vided that the county court of Hamilton county might subscribe to the capital stock of that company the $200,000 previously voted by the county to the Shawneetown branch of the Illinois Central railway, without any further vote. 3 Private Laws of 1869, p. 245.

Counties, cities, etc., might, under the constitution of 1848, be empowered by general law, by their charters or the charters of railway companies, to subscribe stock or make donations. *City of Virden* v. *Allan,* 107 Ill. 505.

This subscription is not affected by the constitution of 1870, as it was made June 11, 1869, before that constitution took effect. *Decker* v. *Hughes,* 68 Ill. 33 ; *Railroad Co.* v. *Pinckney,* 74 id. 277.

Under the constitution of 1848, the legislature could author-ize the county, without a vote of the people, to subscribe to railroads. *County of Richland* v. *People,* 3 Bradw. 216 ; *Wil-liams* v. *Town of Roberts,* 88 Ill. 21.

As to the power of the legislature to bestow the power upon a town to subscribe and take stock in a railroad without a vote, see *Town of Keithsburg* v. *Frick,* 34 Ill. 405, and *Railroad Co.* v. *City of Aurora,* 99 id. 205.

It is contended the $74,000 in bonds voted to the Evansville and Southern Illinois railroad exceeded five per cent of the taxable property as equalized by the State Board of Equalization; but as only $37,000 of the bonds were delivered to the company, we do not see how this defense can avail. Even if the whole $74,000 in bonds had been delivered, the true test of the value of the property of the county would be the assessment of the assessor, and not the equalized value by the State board.

Mr. WILLIAM HAMILL, *pro se:*

All of these bonds have been issued since the present constitution went into effect. They are *prima facie* invalid, and the burden of proof rests on the party affirming their validity. *Town of Prairie* v. *Lloyd,* 97 Ill. 179.

The $200,000 in bonds voted to the Shawneetown branch of the Illinois Central Railroad Company, November 3, 1868, being void for want of power in the charter of that company, or any other lawful authority, to vote on that subject, the 20th section of the act of 1869, incorporating the St. Louis and Southeastern Railway Company, could not confer the requisite power and authority, for a municipal subscription to a railroad company by vote of the people, without any law authorizing it, is void, and contrary to said separate section 2 of the present constitution, and the General Assembly could not, by subsequent act, legalize it. And the bonds being issued without authority of law, there can be no innocent purchaser of them, for they are absolutely void. *Barnes* v. *Town of Lacon,* 84 Ill. 461; *Lippincott* v. *Town of Pana,* 92 id. 24; *Pitzman* v. *Village of Freeburg,* id. 111; *Gaddis* v. *Richland County,* id. 119; *Middleport* v. *Ætna Life Ins. Co.* 82 id. 562; *Marshall* v. *Silliman,* 61 id. 218.

The purchasers of such bonds are bound to take notice of the recitals in the bonds, the records of the county court in relation to the voting and issuing of the bonds, the acts of the

General Assembly specified in the bonds, and the laws and constitution of the State in force at the time of voting upon and time of issuing the bonds. *Lippincott* v. *Town of Pana*, 92 Ill. 24; *Gaddis* v. *Richland County*, id. 119; *Barnes* v. *Town of Lacon*, 84 id. 461; *Middleport* v. *Ætna Life Ins. Co.* 82 id. 562; *Bank of Toledo* v. *Porter Township*, 110 U. S. 608.

The legislature has no power to authorize the county court of a county to create a corporate debt, without the consent of the people, expressed at the polls. *Barnes* v. *Town of Lacon*, 84 Ill. 461; *Gaddis* v. *Richland County,* 92 id. 119; *People* v. *Cass County*, 77 id. 438; *Railroad Co.* v. *City of Sparta*, id. 505.

Section 20 of said act incorporating the St. Louis and Southeastern Railway Company is in violation of article 3, section 23, of the constitution of 1848: "No private or local law which may be passed by the General Assembly shall embrace more than one subject, and that shall be expressed in the title." No such object is expressed in the title, and hence it follows, all provisions of the bill not so expressed are void. *Middleport* v. *Ætna Life Ins. Co.* 82 Ill. 562; *Village of Lockport* v. *Gaylord*, 61 id. 276.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was an application to the county court of Hamilton county, by the county treasurer, *ex officio* collector of taxes, for judgment against the owners of lots and lands, for the taxes of 1886 and prior years. The objector, in this case, had paid all taxes against his lands and lots for the years specified, except what is designated as "railroad tax." That tax was levied by the proper authorities of the county to pay interest on $237,000 of bonds issued by the county of Hamilton to certain railroad corporations. The court sustained the objections made to the validity of the tax so levied, and refused the People judgment for the same against the property of objector. The case is brought directly to this court on the appeal of the

People, and the decision of the county court refusing judgment against the lands of objector, is assigned for error.

It seems that $200,000 of the bonds in controversy were issued by the county of Hamilton to the St. Louis and Southeastern Railroad Company in payment for stock in that corporation, and that $37,000 of the bonds were issued by the same authorities, and are a part of a donation alleged to have been voted by the people of the county to the Evansville and Southern Illinois Railroad Company. As the validity of these bonds depends upon the construction of different statutes, it will be necessary to consider them separately.

*First*—As respects the $200,000 bonds issued to the St. Louis and Southeastern Railroad Company, it is not claimed they were ever authorized, by any vote of the people of the county, to be issued to that particular corporation, either in payment for stock or otherwise. It is claimed, however, that at an election held on the 3d day of November, 1868, the voters of the county elected to subscribe $200,000 to the capital stock of the Shawneetown branch of the Illinois Central railroad, and authorized the issuing of bonds to that amount in payment for a like amount of stock in that company, and that by the 20th section of the act to incorporate the St. Louis and Southeastern Railroad Company, approved March, 1869, the county was authorized and empowered to subscribe to the capital stock of such railway company the $200,000, or any part thereof, voted by a majority of the legal voters of the county, to the "Shawneetown branch of the Illinois Central railroad." There is no pretense there is any enabling act other than the act of March 10, 1869, under which the county of Hamilton could have subscribed for $200,000 stock in the St. Louis and Southeastern Railroad Company, and issued the bonds in question for the payment; and as the point made, that that section of the charter of the corporation authorizing such subscription is unconstitutional, must be sustained, it is fatal to the validity of this whole series of bonds.

It is seen, the act of March 10, 1869, to which reference is made as giving the requisite authority to the county to subscribe for the stock and issue the bonds, is "An act to incorporate the St. Louis and Southeastern Railroad Company." That is all it purports to be by its title. The constitution of 1848, under which this act was passed, contained a restriction that "no private or local law which may be passed by the General Assembly shall embrace more than one subject, and that shall be expressed in the title." This is a private or local act, and although the subscribing by counties, etc., to the capital stock of the corporation thereby created, is germane to the object expressed in the title, (*Belleville, etc., Railroad Co.* v. *Gregory,* 15 Ill. 20, *City of Virden* v. *Allan,* 107 id. 505,) the diversion to that corporation of a subscription theretofore authorized by a vote of the people to be made to a different corporation is a wholly different thing. That, it is to be presumed, affects, adversely, the corporation from which the subscription voted is to be diverted, and is, therefore, clearly not germane to the title of the act, and section 20 must therefore be held to have been inhibited by the constitution of 1848, and is for that reason void and of no effect. *Lockport* v. *Gaylord,* 61 Ill. 276 ; *Middleport* v. *Ætna Life Ins. Co.* 82 id. 562.

It is well settled by the previous decisions of this court, that municipal bonds issued for stock in railroad corporations, without authority of law, are void, no matter into whose hands they may come. As this view of the law is conclusive of the whole case in regard to this series of bonds, it will not be necessary to remark upon any other objections discussed in the argument. Holding, as is done, these $200,000 of bonds were issued without authority of law, it follows, the taxes levied to pay the interest on the same is also without authority of law, and the People should not have judgment for the same against the lands of the objector.

*Second*—The other bonds ($37,000) stand upon a different footing. At the general election held on the 2d of November,

1869, a proposition was submitted to the legal voters of Hamilton county, whether the sum of $74,000 be donated to aid in the construction of the Evansville and Southern Illinois railroad. That proposition was adopted, and the county court found it was authorized to make a donation to such railroad company in bonds to run twenty years, and to bear interest at the rate of seven per cent per annum. The $37,000 of bonds in controversy are one-half of the donation voted, the issuing of bonds for the other half of the donation having been, for some reason, waived. Although these bonds were not issued and delivered until since the adoption of the present constitution, the donation was authorized under existing laws, by a vote of the people of the municipality issuing them, prior to its adoption, and no reason is perceived why these particular bonds are not binding obligations upon the county.

It is said the donation of $74,000 voted, exceeds five per cent of the taxable property of the county for that year, and is for that reason void, as being inhibited by that clause of the constitution which fixes a limit beyond which counties may not contract indebtedness. But it is the value of the taxable property to be ascertained by the "last assessment for State and county taxes previous to the incurring of such indebtedness," upon which the rate per cent is to be computed which is to limit the power of the county to contract indebtedness, and not the "equalized valuation" as fixed by the State Board of Equalization. It is not said such indebtedness shall not exceed five per cent of the taxable property as ascertained by the State Board of Equalization, but as ascertained by the "last assessment for State and county taxes,"—that is, the assessment made by the local assessors. It is conceded that the valuation of the taxable property for that year, for county purposes, was $1,503,087, as fixed by the local assessor. Five per cent of that amount, of course, would exceed the sum of $74,000, the amount voted to be donated.

Other points made against the validity of these particular bonds are thought to require no discussion. They were voted .for by the people, and issued in conformity with enabling acts, .and no valid reason appears why the people that voted for the issuing of these bonds should not be required to pay the taxes .assessed to pay the interest upon them.

The judgment of the county court will be reversed, and the ·cause remanded to that court with directions to enter a judgment against the lands of the objector for that proportion of the taxes levied to pay the interest upon the $37,000 of bonds, ·which may be readily ascertained by computation, and refuse .judgment for the residue of such taxes.

*Judgment reversed.*

MAGRUDER, J. : I do not concur in that portion of the fore-.going opinion, which holds that the five per cent limit of indebtedness named in Sec. 12, Art. 9 of the constitution, is five per cent of the taxable value as ascertained by the assessment for State and county taxes as fixed by the local assessor. I think the equalized valuation as fixed by the State Board of Equalization is the valuation contemplated by the constitution.