### WESSON v. TOWN OF MT. VERNON.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1900.)

#### No. 596.

MUNICIPAL BONDS—DEFENSES—ESTOPPEL BY RECITALS.

Where a township, being authorized by a statute of the state to issue and sell bonds for the purpose of refunding its legal outstanding indebtedness, issues a series of negotiable bonds containing recitals that they are issued under the provisions of such statute, in accordance with a vote of the electors of the township "for the purpose of funding and retiring certain binding, subsisting, legal obligations of said township, which remain outstanding and unpaid," it is bound by such recitals, and, after having sold the bonds, and with the proceeds paid off prior obligations, on which it had for many years paid a higher rate of interest, it is estopped, as against a bona fide purchaser, to repudiate the obligation of such bonds on the ground that the recitals therein were false, and the obligations which the bonds were issued to refund were illegal.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

The facts in this case are these: The town of Mt. Vernon, in Jefferson county, Ill., on July 1, 1887, issued 25 $1,000 funding bonds, for the purpose, as recited on the face of each bond, of "funding and retiring certain binding, subsisting, legal obligations of said township, which remain outstanding and unpaid." The bond is in the usual form of a negotiable bond payable to

bearer, and contains this recital: "This bond is one of a series of twenty-five of like tenor and date issued for the purpose of funding and retiring certain binding, subsisting, legal obligations of said township which remain outstanding and unpaid, under the provisions of an act of the general assembly of the state of Illinois entitled 'An act to enable counties, cities, towns, townships, school districts and other municipal corporations to fund, retire and purchase their outstanding bonds and other evidences of indebtedness, and to provide for the registration of new bonds or other evidences of indebtedness in the office of the auditor of public accounts,' approved February 13, 1865, and acts amendatory thereto, approved April 27, 1877, and June 4, 1879, and in pursuance of the vote of a majority of the legal voters of said township voting at an election duly called and held under said act on the second day of June, A. D. 1887. We hereby certify that all the requirements of said acts have been fully complied with in the issue hereof." The first section of the funding act provides, in substance, "that where any county, city, town, township * * * has issued bonds or other evidences of indebtedness for money, or has contracted debts, which are the binding, subsisting, legal obligations of such * * * township, * * * and the same, or any portion thereof, remain outstanding and unpaid, it shall be lawful for the proper corporate authorities of such * * * township, upon the surrender of any such bonds or other evidence of indebtedness, or any portion thereof, to issue in lieu or place thereof, to the owners or holders of the same, new bonds prepared as hereinafter directed. And it shall also be lawful for the proper corporate authorities of any such * * * township to cause to be thus issued such new bonds, and sell the same to raise money to purchase or retire any or all of such outstanding bonds or other evidences of indebtedness, and the proceeds of the sales of such new bonds to be expended under the direction of the corporate authorities aforesaid, in the purchase or retiring of the outstanding bonds, or other evidences of indebtedness of such * * * township, * * * and for no other purpose whatever. All bonds * * * issued under the provisions of this act shall show upon their face that they are issued under this act, and the purpose for which they are issued, and shall be uniform of design and style throughout the state, to be prescribed by the state auditor, whose imperative duty it shall be to devise and prepare such uniform style and draft adapted to the classes of bonds herein provided for. * * * And when such new bonds * * * shall have been issued in order to be placed on the market and sold to obtain proceeds with which to retire outstanding bonds, * * * it shall be the duty of the auditor, on the request of the corporate authorities issuing them, * * * to negotiate them at not less than par and on the best terms he can: provided the corporate authorities may negotiate, sell and dispose of these at not less than par without the intervention of the auditor: and provided, further, that no new bonds * * * shall be issued under this act unless the same shall be first authorized, as herein provided, by a vote of a majority of the legal voters of such * * * township * * * voting at some general election or special election held for that purpose." The second section provides for the auditor certifying on the back of all such bonds the assessed valuation of the real and personal property of the municipality issuing the bonds. Section 3 provides for the election notice. Section 4 provides for registering the new bonds in the state auditor's office upon the affidavit of the proper municipal officer. Section 11 provides what municipal officers shall execute funding bonds so issued, designating the supervisors and town clerks of towns organized under the township organization law of this state to sign those issued by townships. A jury was waived, and the case tried before the court without a jury. According to the special findings of facts, on the 29th day of July, 1886, a petition signed by more than 10 legal voters of Mt. Vernon township was presented to and acted upon by the corporate authorities of the town in calling a special election for the 2d day of June, 1887. The petition and election notice both submitted to the voters the proposition of voting 25 new bonds of $1,000 each, to bear 6 per cent. interest, and be payable after five years, at the option of the town, to be sold for the purpose of redeeming the outstanding 8 per cent. bonds of the town, which the election notice designates as a subsisting legal indebtedness of said town. After the election, the supervisors caused new bonds to be issued and put on the market, and sold at

par, and with the proceeds redeemed the old 8 per cent. bonds, had the auditor cancel them, and then caused them to be burned. The plaintiff in error bought this entire issue of 25 new bonds of Clutter & Le Crone, and paid for them par and 3 per cent. commission, at the First National Bank of Springfield, Mass., about the 18th day of November, 1887, and has ever since been the owner of them all; and it is further found that he was not a dealer in bonds, but purchased them as an investment for himself; that he never owned any other bonds of this town, and knew nothing of these 25, except, when he purchased them, he learned from Clutter & Le Crone that the proceeds were to go to pay off other bonds of the town which had always been considered valid, and on which the interest had always been paid; that when plaintiff in error purchased these 25 funding bonds they had all the coupons on, and that the town paid these regularly on all the bonds until January 1, 1891, when it quit paying the coupons on Nos. 11 to 25, on which numbers maturing January and July 1, 1891, 1892, 1893, 1894, and 1895, making 150 in all, of $30 each, this suit is brought. Upon these special findings, among other things, which are not material to the consideration of the case, the plaintiff in error asked the court at the close of the hearing to hold: "That plaintiff is a bona fide purchaser of bonds numbered 11 to 25 of said funded issue, and of their coupons in suit in this case, and is entitled to judgment for the amount of said coupons sued on, with lawful interest thereon since default," which proposition the court refused to hold, and to which refusal to so hold plaintiff then and there duly excepted, and judgment was given for the defendant. The provision of the present Illinois constitution, passed July 2, 1870, and upon which the defendant relies for its defense, is as follows: "No county, city, town, township or other municipality shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation. Provided, however, that the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions where the same have been authorized, under existing laws, by a vote of the people of such municipality prior to such adoption." Rev. St. p. 74. The 15 of the old bonds so refunded, and which the defendant in error claims were void, were issued in July, 1870, shortly after the above constitutional provision was adopted, pursuant to a vote of the electors of the town had on July 16, 1870.

John C. Mathis, for plaintiff in error.
Samuel P. Wheeler and C. H. Burton, for defendant in error.

Before WOODS, Circuit Judge, and BUNN and SEAMAN, District Judges.

BUNN, District Judge, after making the above statement of the case, delivered the opinion of the court.

The sole question in the case is whether the court erred in giving judgment for the defendant upon the findings of fact, and our opinion is that the defense is as faulty in law as it is in foro conscientiæ, and that judgment should have been given for the plaintiff upon the findings. The language of the supreme court first delivered through Mr. Justice Campbell in Zabriskie v. Railroad Co., 23 How. 381, 16 L. Ed. 488, repeated through Mr. Justice Clifford in Bissell v. City of Jeffersonville, 24 How. 287, 16 L. Ed. 664, and lastly through Mr. Justice Harlan in Hackett v. Ottawa, 99 U. S. 86, 25 L. Ed. 363, is quite as applicable to this case as to either of those, that:

"A corporation, quite as much as an individual, is held to a careful adherence to truth in their dealings with mankind; and cannot, by their representations or silence, involve others in onerous engagements, and then defeat the calculations and claims their own conduct has superinduced."

The town issued these bonds to refund an existing indebtedness on which for many years it had been paying 8 per cent. interest. It had a laudable desire, which the law encouraged, to reduce the rate of interest it had been paying. Eight per cent. was too much. It could get the money for 6. The refunding law gave ample power to the town to issue new bonds, and refund its indebtedness at a lower rate of interest. In order to secure this result, and render the bonds marketable, it recited in each of its bonds that it was issued for the purpose of funding and retiring certain binding, subsisting, legal obligations of the town which remained outstanding and unpaid, and that all the requirements of the refunding act had been fully complied with in the issue. With these representations the bonds are placed on the market and purchased at full face value in cash by an innocent purchaser, having no notice or intimation of any defect in the issue, or that the recitals in the bonds were false, and placed there to deceive and defraud the public. The money is paid over to the town, and used for the purpose of taking up and refunding certain outstanding bonds on which the town had been paying for many years a high rate of interest. The town pays interest for many years on these new bonds, but finally the discovery is made, or supposed to be made, that a portion of the old bonds so taken up were not valid and binding obligations against the town, as was certified to as a fact upon the face of each bond. Without offering to return the money, the town seeks arbitrarily and against all conscience to repudiate and defeat 15 of the new bonds. It admits that 10 of the bonds, numbered from 1 to 10, are valid, but claims that the other 15, numbered from 11 to 25, inclusive, are void. Being a part of the same issue, and all issued for the same purpose, and containing the same recitals, why it should be determinable by the town to say that the last 15 of the series are void, while the first 10 of the same series are admitted to be valid, is not very clear. The claim, however, seems to be based upon some very far-fetched idea of a willful conversion of goods at common law. But this is the attitude the town occupies. and the character of the claim the town is now making. and we think the case comes squarely within several well-adjudicated cases by the supreme court. Whose business was it to know whether the recitals contained in the bonds were true or false, the purchaser, residing a thousand miles away, who knew nothing about it, and had not the means of knowing, or the town authorities, who were right on the ground, and had the knowledge or the means of knowledge in their own hands? These recitals were recitals of facts, and presumably, and no doubt in fact, were within the knowledge of the town authorities. In order to render the bonds salable at a low rate of interest, they were made payable to bearer, and negotiable, and those recitals put into them. The town authorities knew very well that in no other way could they be sold on the market. Having put these recitals in the bonds, whereby they were enabled to sell them, and having sold them, and used the proceeds to pay off the previous indebtedness of the town on which they had been paying 8 per cent. interest for many years. the injustice of this defense

to the new bonds, purchased in the open market by a bona fide holder, in repudiating and falsifying its own representations of fact contained in the recitals, is quite apparent, and can receive but little countenance in a court of justice.

In Hackett v. Ottawa, 99 U. S. 86, 25 L. Ed. 363, as in this case, the defendant insisted that there was a total want of authority to issue the bonds, because they were not issued for municipal purposes; just as here the defendant below contends that some of the bonds were not issued for the authorized purpose of refunding its lawful indebtedness, but for the purpose of funding a debt contracted by the town contrary to the provisions of the constitution of Illinois, which forbade towns from voting aid in the construction of a railroad. The cases are upon the same footing. Bonds voted contrary to law to aid in the construction of a public improvement are just as illegal and void, and no more so, than bonds issued for a purpose not municipal in character, and the language of the opinion in that case is quite as applicable to the case at bar. The court says:

"The bonds in suit, by their recital of the titles of the ordinances under which they were issued, in effect assured the purchaser that they were to be used for municipal purposes, with the previous sanction, duly given, of a majority of the legal voters of the city. If he would have been bound, under some circumstances, to take notice, at his peril, of the provisions of the ordinances, he was relieved from any responsibility or duty in that regard by reason of the representation, upon the face of the bonds, that the ordinances under which they were issued were ordinances 'providing for a loan for municipal purposes.' Such a representation by the constituted authorities of the city, under its corporate seal, would naturally avert suspicion of bad faith upon their part, and induce the purchaser to omit an examination of the ordinances themselves. It was, substantially, a declaration by the city, with the consent of a majority of its legal voters, that purchasers need not examine the ordinances, since their title indicated a loan for municipal purposes. The city is therefore estopped, by its own representations, to say, as against a bona fide holder of the bonds, that they were not issued or used for municipal or corporate purposes. It cannot now be heard, as against him, to dispute their validity. Had the bonds, upon their face, made no reference whatever to the charter of the city, or recited only those provisions which empowered the council to borrow money upon the credit of the city, and to issue bonds therefor, the liability of the city to him could not be questioned. Much less can it be questioned, in view of the additional recital in the bonds, that they were issued in pursuance of an ordinance providing for a loan for municipal purposes; that is, for purposes authorized by its charter. Supervisors v. Schenck, 5 Wall. 772, 18 L. Ed. 556. It would be the grossest injustice, and in conflict with all the past utterances of this court, to permit the city, having power under some circumstances to issue negotiable securities, to escape liability upon the ground of the falsity of its own representations, made through official agents, and under its corporate seal, as to the purposes with which these bonds were issued. Whether such representations were made inadvertently, or with the intention, by the use of inaccurate titles of ordinances, to avert inquiry as to the real object in issuing the bonds, and thereby facilitate their negotiation in the money markets of the country, in either case the city, both upon principle and authority, is cut off from any such defense."

In Orleans v. Platt, 99 U. S. 676, 25 L. Ed. 404, the same principles are asserted. In that case the court says:

"The bonds in question have all the properties of commercial paper, and in the view of the law they belong to that category. Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857. This court has uniformly held, when the question has

been presented, that, where a corporation has lawful power to issue such securities, and does so, the bona fide holder has the right to presume the power was properly exercised, and is not bound to look beyond the question of its existence. Where the bonds on their face recite the circumstances which bring them within the power, the corporation is estopped to deny the truth of the recital. Mercer Co. v. Hackett, 1 Wall. 83, 17 L. Ed. 548; San Antonio v. Mehaffy, 96 U. S. 312, 24 L. Ed. 816; Moultrie Co. v. Rockingham Ten Cent Sav. Bank, 92 U. S. 631, 23 L. Ed. 631; Moran v. Commissioners, 2 Black, 722, 17 L. Ed. 342; Commissioners v. Aspinwall, 21 How. 539, 16 L. Ed. 208; Bank v. Turquand, 6 El. & Bl. 327."

There was a familiar principle applied by the supreme court in that case, which has a much stronger application in this, because the town on account of the recitals in the bonds can hardly be considered an innocent party; that, where one of two innocent persons must suffer a loss, and one of them has contributed to produce it, the law throws the burden upon him, and not upon the other party. Hern v. Nichols, 1 Salk. 289; Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 19 L. Ed. 1008. The rule is also well stated by Mr. Justice Strong in the previous case of Town of Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579, as follows:

"And the bonds themselves recite that they are issued under and by virtue of the act incorporating the railroad company, approved March 24, 1869, 'and in accordance with the vote of the electors of said township of Coloma, at a regular election held July 25, 1869, in accordance with said law.' After all this, it is not an open question, as between a bona fide holder of the bonds and the township, whether all the prerequisites to their issue had been complied with. Apart from and beyond the reasonable presumption that the officers of the law, the township officers, discharged their duty, the matter has passed into judgment. The persons appointed to decide whether the necessary prerequisites to their issue had been completed, have decided, and certified their decision. They have declared the contingency to have happened on the occurrence of which the authority to issue the bonds was complete. Their recitals are such a decision, and beyond those a bona fide purchaser is not bound to look for evidence of the existence of things in pais. He is bound to know the law conferring upon the municipality power to give the bonds on the happening of a contingency; but whether that has happened or not is a question of fact, the decision of which is by law confided to others,—to those most competent to decide it,—and which the purchaser is, in general, in no condition to decide for himself."

These adjudications have never been overruled or qualified, but have often been reaffirmed and followed in subsequent cases by the supreme and other federal courts. See Buchanan v. Litchfield, 102 U. S. 278, 26 L. Ed. 138; Oregon v. Jennings, 119 U. S. 74, 7 Sup. Ct. 124, 30 L. Ed. 323; Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 216, 35 L. Ed. 1040; National Life Ins. Co. of Montpelier v. Board of Education of City of Huron, 10 C. C. A. 637, 62 Fed. 778; City of Huron v. Second Ward Sav. Bank, 30 C. C. A. 38, 86 Fed. 272. In this last case it was held by the United States circuit court of appeals for the Eighth circuit that a municipal corporation is estopped from defending an action by an innocent purchaser to collect its negotiable bonds which recite that they were issued for the purpose of funding the bonds, warrants, or floating debt of the corporation, either on the ground that the warrants or bonds which they were issued to satisfy were void, or that the apparent debt which they were issued to pay was fictitious. See, also, Evans-

ville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760; Rollins & Sons v. Board of Com'rs of Gunnison Co., 26 C. C. A. 91, 80 Fed. 692; Board of Com'rs of Haskell Co. v. National Life Ins. Co. of Montpelier, 32 C. C. A. 591, 90 Fed. 228. In this last case it was held by the United States circuit court of appeals for the Eighth circuit:

"That the recital in county bonds that they were issued in accordance with the provisions of a statute authorizing counties to refund their indebtedness imports that they were issued in pursuance of a lawful and proper resolution, and of honest and just action on the part of the county board under that statute; and also that the obligations refunded were such as could lawfully be refunded thereunder; and that it relieves the innocent purchaser of all inquiry, notice, or knowledge of the actual action and record of the board, and estops the county from denying that proper action was taken, and that a lawful resolution was passed."

It was held by the United States circuit court of appeals for the Sixth circuit in Risley v. Village of Howell, 12 C. C. A. 218, 64 Fed. 453, that if, in municipal bonds, the recital of facts, taken collectively, are such as naturally and reasonably would inspire the confidence and belief of purchasers in the existence of the conditions which would make their issue lawful, and that was the intended and expected consequence of incorporating those recitals in the bonds, a bona fide purchaser would not be chargeable with notice, and defeated in his right of recovery as such, by the fact that an ordinance recited in the bonds by its date only misappropriated the bonds to an unlawful purpose.

In Sherman Co. v. Simons, 109 U. S. 735, 3 Sup. Ct. 502, 27 L. Ed. 1093, it was held that, when a statute directs an officer to examine and determine the amount of the indebtedness of a county for the purpose of further determining the amount of bonds to be issued by the county for a given purpose, and the officer performs the duty, the county cannot, in a suit by a holder of a bond issued as a result of the exercise of the power by the officer, set up that the finding was not true. So, in the case at bar, it was the duty of the town officers to ascertain and know the amount of the lawful indebtedness of the town, in order to know how many refunding bonds to issue; and, having recited in the bonds that the entire issue of $25,000 was made to take the place of a lawful, subsisting indebtedness of the town, it cannot be heard to say that these recitals are false as against an innocent purchaser of the bonds. The town officers had it in their power to know, and it was their business in issuing the refunding bonds to know, how much the lawful indebtedness of the town was, and, having certified that it was $25,000, and having issued refunding bonds to that amount, it cannot be heard to say that the indebtedness was not so much by $15,-000. The case of Waite v. City of Santa Cruz (C. C.) 89 Fed. 619, recently decided by the circuit court for the Northern district of California, is very similar in its facts to the case at bar, and the court held:

"That, where there was a statute authorizing cities to issue bonds to refund their bonded indebtedness, and bonds issued by a city contain recitals that they were issued in conformity with such statute for the purpose of refunding

the city's bonded debt, and that every act required by the statute as a condition precedent to their issuance was performed, the city cannot defeat a recovery on such bonds as against an innocent purchaser on the ground that such recitals were false, and that a portion of the debt refunded was that of a private corporation."

The last reported declaration of the supreme court on this subject reaffirms its previous rulings, and in the judgment of this court is quite conclusive of the case at bar. In Board of Com'rs of Gunnison Co. v. E. H. Rollins & Sons, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689, decided during the present year, it was held that:

"The recitals in the bonds of Gunnison county that they were issued by the board of county commissioners for said Gunnison county in exchange at par for a valid floating indebtedness of the said county outstanding prior to September 2, 1882, under and by virtue of and in full conformity with the provisions of an act of the general assembly of the state of Colorado entitled 'An act to enable the several counties of the state to fund their floating indebtedness,' approved February 21, 1881; that all the requirements of law have been fully complied with by the proper officers in the issuing of this bond; that the total amount of the issue does not exceed the limit prescribed by the constitution of the state of Colorado; and that this issue of bonds has been authorized by a vote of a majority of the duly-qualified electors of the said county of Gunnison voting on the question at a general election duly held in said county on the 7th day of November, A. D. 1882, estopped the county from asserting, against a bona fide holder for value, that the bonds so issued created an indebtedness in excess of the limit prescribed by the constitution of Colorado."

The judgment of the circuit court is reversed, and the cause remanded, with instructions to enter judgment in favor of the plaintiff in error.