## HAMILTON COUNTY v. MONTPELIER SAVINGS BANK & TRUST CO.

(Circuit Court of Appeals, Seventh Circuit.    October 1, 1907.    Rehearing Denied November 19, 1907.)

### No. 1,349.

1. COUNTIES—FUNDING BONDS—CONSTITUTIONAL LIMITATION OF INDEBTEDNESS.

   Const. Ill. 1870, art. 9, § 12, which limits the amount of indebtedness which may be lawfully contracted by any municipality to 5 per cent. of the value of the taxable property therein, relates solely to the creation of indebtedness thereafter, and neither authorizes repudiation, nor affects the making of terms for payment of existing legal liabilities; hence the funding of such liabilities by a county, authorized by statute and vote, was unaffected by the limitation, and the fact alone that funding bonds issued for that purpose, reciting that "binding, subsisting legal obligations of said county" were thereby funded exceeded such limitation, neither implies nor amounts to a violation of the constitutional provision which can only be made to appear by impeaching such recital as to the validity of the indebtedness funded.

2. SAME—RECITALS IN BONDS—EFFECT AS ESTOPPEL.

   Rev. St. Ill. 1881, c. 113, authorizes counties and other municipalities to issue bonds for the purpose of retiring outstanding obligations. A county had an outstanding issue of bonds. After years of litigation in both state and federal courts the liability of the county was established in favor of the holders of a majority of such bonds, and judgments entered against it thereon, while other portions of the issue had been adjudged invalid, and the holders defeated. Others of the bonds were in the hands of holders whose rights had not been adjudicated. In such state of facts a compromise was effected, pursuant to which the county voted to issue funding bonds under such statute, to be used in settlement of the judgments and the outstanding unadjudicated bonds, and they were so used; judgments being entered on the unadjudicated bonds by consent, and all judgments satisfied in exchange for the funding bonds. Such bonds recited that they were issued under such statute, and that "binding, subsisting legal obligations of said county" were thereby funded. *Held* that, under the statute, the county officers, authorized thereto by a vote of the electors, had power to make the compromise, and for that purpose to determine on behalf of the county that the unadjudicated outstanding bonds were valid and subsisting obligations, and that their recital of such fact estopped the county as against a bona fide holder for value of the funding bonds to deny their validity, on the ground that all or any part of the obligations thereby retired were invalid, either on constitutional or statutory grounds.

In Error to the Circuit Court of the United States for the Eastern District of Illinois.

The judgment against county of Hamilton is in assumpsit, for recovery upon so-called "funding bonds," issued by the county, and held by the Montpelier Savings Bank & Trust Company, the plaintiff below. These bonds were issued under the provision of a general act of the Legislature of Illinois, mention-

ed in the bonds—being chapter 113, Rev. St. 1881; 3 Starr & C. Ann. Ill. St. par. 1, c. 113—authorizing issuance of bonds by municipalities for the purpose of funding and retiring outstanding obligations, and pursuant to a vote of the people for such issue. They were in the following form, except that the numbering and times of payment were various:

"United States of America, State of Illinois.

No. 85                         County of Hamilton.                         $1000.

"Funding Bond, Issued under Act of 1865.

"As amended April 27th, 1877 & June 4th, 1879.

"Third Class.

"Seven years after date, for value received, the county of Hamilton promises to pay to the bearer hereof the sum of one thousand dollars, in lawful money of the United States, at the American Exchange National Bank in the city of New York with interest at the rate of 4½ per cent. per annum, payable January and July as shown by and upon the surrender of the annexed coupons as they severally become due, except the last coupon which is due with the bond.

"This bond is issued for the purpose of funding and retiring certain binding, subsisting legal obligations of said county, which remain outstanding and unpaid under the provisions of an act of the General Assembly of the state of Illinois, entitled 'An act to enable counties, cities, towns, townships, school districts and other municipal corporations to fund, retire and purchase their outstanding bonds and other evidences of indebtedness, and to provide for the registration of new bonds or other evidences of indebtedness in the office of the Auditor of Public Accounts,' approved February 13th, 1865 (Pub. Laws 1865, p. 44), and acts amendatory thereto, approved April 27th, 1877 (Laws 1877, p. 158), and June 4th, 1879 (Laws 1879, p. 229), and in pursuance of the vote of a majority of the legal voters of said county, voting at an election duly called under said act, and notified, held, and conducted according to the laws of said state.

"We hereby certify that all the requirements of said acts and laws have been fully complied with in the issue hereof.

"In testimony whereof, we, the undersigned officers of the said county, being duly authorized to execute this obligation on its behalf, have hereunto set our signatures this first day of August, A. D. 1898.

"W. J. Sayers,

"Frank Lockett,                         Chairman, Board of Supervisors.

"[Seal.]          Clerk."

On reverse of bond:

"Auditor's Office, Illinois, Springfield, Sept. 2, 1898.

"I, James S. McCullough, Auditor of Public Accounts of the state of Illinois, do hereby certify that the within bond has been registered in this office this day pursuant to the provisions of an act entitled 'An act to enable counties, cities, towns, townships, school districts and other municipal corporations to fund, retire and purchase their outstanding bonds and other evidences of indebtedness, and to provide for the registration of new bonds, or other evidences of indebtedness, in the office of the Auditor of Public Accounts,' approved February 13, 1865, and acts amendatory thereto, approved April 27, 1877, and June 4, 1879.

"I further certify that the aggregate equalized valuations of property assessed for taxation in said county for the year 1897 were certified to this office as follows: Real estate, $1,297,229.00; personal property, $330,447.00.

"In testimony whereof, I have hereunto subscribed my name, and affixed the seal of my office, the day and year aforesaid.

"J. S. McCullough,

"[Seal.]                         Auditor Public Accounts."

The record is voluminous with facts in reference to the alleged indebtedness for which these funding bonds were issued, litigation over the pre-existing bonds, and circumstances attending the refunding transaction. In the brief submitted on behalf of the county of Hamilton the ultimate facts are recited,

upon which the various contentions rest for reversal of the judgment, and the following summary is deemed sufficient for the purposes of review: In 1868 the county of Hamilton voted to subscribe $200,000 to the capital stock of the Shawneetown branch of the Illinois Central Railroad Company and to issue bonds for that amount in payment thereof. This railroad was not built, and in 1869 the Legislature of Illinois passed an act incorporating the St. Louis & Southeastern Railway Company to run through that county, and authorized the county, without further vote, to issue the bonds theretofore voted in payment of a subscription by the county for $200,000 of stock of the new company. In 1871 bonds to the amount of $200,000 (being 200 bonds of $1,000 each) were so issued. In 1881, one Walter M. Jackson obtained a decree against said county under a cross-bill filed by him in an action then pending in the federal court for the Southern District of Illinois, that he was the holder for value of 105 of the above-mentioned bonds with coupons attached, and that they were adjudged valid, legal, and binding obligations of the county. In 1887 proceedings were had in a state court to stop the levy of taxes for payment of interest on these bonds, and the judgment of the county court granting such relief was subsequently affirmed by the Supreme Court of Illinois in People ex rel. v. Hamill, 134 Ill. 666, 17 N. E. 799, 29 N. E. 280. Subsequently, one Post sued the county in the federal court upon interest coupons attached to such issue of bonds, all but six of the bonds having been adjudicated as valid under the above-mentioned Jackson decree. This case afterwards proceeded in the name of Austin, as administrator for Post, and on writ of error from the judgment of the Circuit Court therein in favor of the bondholder was brought to this court, and was here affirmed as to the bonds covered by the Jackson decree, but in reference to the six bonds not thus covered the county was relieved from liability upon the authority of the above-mentioned Hamill case. Austin, Administrator, v. Hamilton Co., 76 Fed. 208, 22 C. C. A. 128. Again, in the case of Zane v. Hamilton Co., 104 Fed. 63, 43 C. C. A. 416, other like bonds, not within the Jackson decree, were alike adjudged to be invalid, and the Supreme Court (189 U. S. 370, 23 Sup. Ct. 538, 47 L. Ed. 858) afterwards affirmed such decision. In 1894, two judgments were recovered in the federal court against said county upon bonds included in the prior Jackson decree, one in favor of Walter M. Jackson for $52,200.88, and the other in favor of Edward H. Shepard for $103,509.95. In 1893 one Bowles recovered in the same court a judgment against the county upon interest coupons attached to bonds of this issue. In 1898, Thomas C. Mather, as attorney for Jackson and Shepard and other bondholders, entered into negotiation with the county board of Hamilton county for settlement of the indebtedness claimed under the entire bond issue above mentioned. And thereupon the county board called an election to submit to a vote of the people a proposition to issue funding bonds bearing interest at 4½ per cent. to take up the old bonds at these rates: That all bonds covered by the Jackson decree, above mentioned, be taken up at par, with accrued interest, and the remaining bonds, not so covered, at 55 per cent. of the principal and accrued interest. It was agreed by Mather, who controlled all of the old bonds except five or six, to accept such new bonds in lieu thereof. This preliminary agreement was made in writing between the supervisors and Mr. Mather, and among other terms it was provided that the judgments theretofore obtained should be satisfied upon the completion of such arrangement; and on behalf of the county board it was further stipulated as to all bonds not covered by the Jackson decree, and not otherwise in judgment against the county, that judgment be entered against the county thereupon, and to that end that the county would have appearance entered in suits thereupon and jury waived. In conformity with this arrangement an election was held, and the issue authorized by a vote of 1,059 in favor thereof, and 483 against the issue. "At its meeting held July 27, 1898, the board, after declaring the proposition carried, passed a resolution instructing that there be prepared 280 bonds of the county, in accordance with the form prescribed therefor by the Auditor of Public Accounts, and that such bonds be executed by the chairman of the board and the clerk, with the seal of the county, and delivered to said Mather upon his compliance with the terms of his said contract with the county. On August 27, 1898, the board, at a special meeting, passed a resolution directing that the chairman and clerk of the board, and I. H. Webb, be ap-

pointed on behalf of the county to go to Springfield and take sufficient of the new bonds for the purpose of funding and retiring, or selling, and with the proceeds retiring the said $200,000 bond issue of 1871, and with said bonds to carry out on behalf of the county the terms of the said agreement between said Mather and the county; and that in carrying out said agreement they should deliver the necessary amount of bonds to said Mather under said contract. Said Webb was further authorized, as attorney for the county, to waive service of process in the United States Circuit Court, and to enter the county's appearance in any suits to be commenced in said court on any of said $200,000 bond issue, and to waive a jury, and consent to entry of judgment thereon against the county, according to the terms of said contract with Mather." The representatives so authorized carried the new bonds, bearing date August 1, 1898, to Springfield, and delivered the 266 bonds of the county to Mather, pursuant to the arrangement, and the bonds so delivered were purchased by Farson, Leach & Co., and by them sold to the defendant in error, and are the bonds in controversy. In connection with the visit of these representatives of the county to Springfield, the representatives caused appearances to be entered on the part of the county to suits then filed for recovery upon the bonds not theretofore adjudicated against the county, and judgment was entered accordingly in favor of Edward D. Shepard for $101,393.48. All judgments against the county in these matters were satisfied of record upon the delivery of the bonds as above mentioned. The county paid interest on these bonds up to 1905, and paid $84,000 of principal which matured prior to that year, but thereafter refused to make further payments. Upon the trial under the issues, the court directed, and the jury rendered, a verdict against the county, upon which the judgment was entered. Error is assigned for various alleged causes (numbering 52), but specification is not deemed needful, as the general discussion in the opinion is applicable to all.

Samuel Alschuler, for plaintiff in error.

Chester B. Masslich, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The funding bonds upon which this judgment rests are alike in form, recitals, statutory authority, and procedure for issuance, with those involved in Graves v. Saline County, 161 U. S. 359, 16 Sup. Ct. 526, 40 L. Ed. 732, which were upheld as "valid and binding obligations" of the county, in the hands of a bona fide holder for value. That case arose upon a bill filed by the county to enjoin collection and payment of interest upon the funding bonds, wherein the bondholder intervened, and decree passed in favor of the county. On appeal to this court, three questions were certified to the Supreme Court, upon facts stated, namely: (1) Whether the county was estopped by the recitals in the funding bonds to assert that the original bonds so funded "were not binding, subsisting legal obligations of said county;" (2) whether the funding bonds were binding obligations in the hands of the bona fide holder; (3) and if not valid, whether relief under the bill could be conditioned upon payment by the county of the amount of certain valid bonds which were included in the exchange. In the opinion of the Supreme Court thereupon, the second question only was answered and in the affirmative, with the remark that "this renders a formal answer to the other questions unnecessary." The present action, however, is at law, and, under the issues tendered and raised by pleadings and testimony, the judgment can be upheld only upon the ground that the county is estopped, as against the bona fide purchaser of the bonds for value, from setting up the invalidity, in whole or in part, of the alleged

indebtedness for which the funding bonds were voted and issued. So, the Saline County Case does not expressly meet the question thus arising of the force of recitals in such funding bonds; but it is clearly applicable for interpretation of the funding statute and proceedings thereunder, and is instructive in reference to the recitals.

The matters relied upon to defeat recovery, stated in various forms in several pleas, may be summarized in these propositions: (1) That the entire issue of original bonds, amounting to $200,000, constituting the sole basis and consideration for the funding bonds in suit, was unauthorized and void, as theretofore "finally and conclusively adjudged;" (2) that all of such bonds were included in the funding arrangement, so that alleged prior adjudications upholding the validity of a portion ($105,000) of the original issue, in the hands of one Jackson, as purchaser thereof, were without force, in any view, to authorize or validate the funding bonds thus issued; and (3) that both original and funding issues were in excess of the limit of municipal indebtedness fixed by the constitutional provision (1870) of Illinois. Each of the defenses thus plead and tendered, was (in effect) excluded by the trial court in directing a verdict for the plaintiff below, and, if the county is entitled to interpose either of these matters as a defense, error is well assigned.

The contentions for estoppel, in support of the judgment, are twofold: First, under the recitals in the bonds and the vote authorizing the funding settlement; and, second, through final judgments against the county for the entire indebtedness thus recognized and settled. Both grounds are distinctly raised by various forms of averment in the declaration, with the facts in reference to the judgments undisputed, and the only material controversies of fact in the record, bearing upon one or the other proposition of estoppel, are deductions sought under each in two instances of conceded or undisputed circumstances. One relates to the issue of bona fides in the purchase of the bonds, and is thus applicable to the question of estoppel by recitals therein, which can arise only in favor of one who derives ownership through purchase for value, without notice of defects or invalidity; while the other relates to the nature and standing of the last judgment obtained of the several judgments upon which the second claim of estoppel is predicated. The theory upon which the challenge of bona fides rests involves the general doctrine of the force of recitals, so that it may best be considered in that connection, rather than preliminarily; and the theory as to the character of the ultimate judgment which accompanied the settlement, if tenable in any view, is without bearing upon that doctrine.

The funding bonds in controversy were issued in purported compromise and settlement of pre-existing indebtedness of the county, upon action of the county authorities and vote of the people, in purported conformity with legislative authority to that end, recited in the bonds—namely, the Illinois funding bond act of 1865, as amended in 1877 and 1879 (chapter 113, Rev. St. 1881; 3 Starr & C. Ann. Ill. St. c. 113); and the validity of this statute is well recognized, and its interpretation unquestionable. Graves v. Saline County, supra. Each bond recites that it "is issued for the purpose of funding and re-

tiring certain binding, subsisting legal obligations of said county, which remain outstanding and unpaid," and "in pursuance of the vote of a majority of the legal voters of said county," at an election called and conducted according to law; and further certifies "that all the requirements of said acts and laws have been fully complied with in the issue hereof."

These primary facts thereupon are undisputed: That bonds of the county were outstanding and unpaid, exceeding the funding issue, with final adjudications of liability upon the major portion thereof unsatisfied, when a compromise and funding arrangement was negotiated; that such arrangement was duly submitted to a vote of the people, and a large majority voted for the issue of funding bonds accordingly; and that the bonds in question were issued and sold, and proceeds applied in conformity with such arrangement and vote. Nevertheless, with the good faith of the transactions unchallenged, impeachment is now sought of the plain recitals in the bonds, that "subsisting legal obligations of said county" were thus funded and settled, to defeat recovery in the hands of this holder, who purchased the bonds in the market, before due, for value. The alleged defenses to that end are reducible to two contentions, under which all questions raised on behalf of the county may be fully considered (without pursuing the order of discussion in the briefs), namely: First, that the funding bonds are invalid per se, because the amount voted and issued exceeded the limit fixed by the Constitution of Illinois for incurring municipal indebtedness; second, that the original bond issue thereby settled was invalid for want of municipal power to contract such indebtedness, because (1) the enabling act was not in conformity with a constitutional requirement, and (2) the issue exceeded the constitutional limit.

1. The first-mentioned inquiry is within narrow compass, free from complication of law or fact, as it involves alone the question whether the mere issuance of funding bonds in excess of the 5 per cent. limitation violates the constitutional provision referred to, irrespective of the status of pre-existing municipal indebtedness thereby funded. The further contention that the original issue of bonds thus funded was subject to and infringed the limitation, which is pressed in the argument of counsel as involved in such inquiry, is plainly beyond its scope, as both votes of the people for the funding issue and recitals in the bonds are presumptive of an existing indebtedness, lawfully incurred; so that this primary contention, that the limitation is directly applicable, upon the face of the funding transaction, must rest upon the terms of the limitation, with the truth of these recitals uncontroverted. If the limitation thus applies to the funding transaction, irrespective of the assumed validity of the indebtedness when incurred, the funding bonds are plainly invalid, without reference to bona fides on the part of the purchaser and municipal authorities. Not only was sufficient information disclosed therein to charge the purchaser with notice that the issue exceeded such limit, but knowledge in fact is conceded, and recovery would be prohibited, in such view, under either line of authorities cited upon this point. But the question whether the validity of the consideration—the original bonds—is subject to challenge rests upon evidence not disclosed in the new bonds, nor involved

in the present inquiry, and arises only under the second proposition above stated.

The Illinois Constitution, adopted in 1870 (section 12, art. 9), forbids municipalities "to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes, previous to the incurring of such indebtedness"; with proviso that it shall not apply to bonds issued in compliance with vote of the people prior to its adoption. Were the issue of bonds in controversy not a funding issue, their date (1898) would be conclusive of violation of this provision. It was, however, a funding transaction, as recited in the bonds and voted by the people, and thus upon its face created no indebtedness—presumptively, under the action of the people and express recitals in the bonds, was a mere change in form and terms of payment of prior obligations of the county, lawfully incurred. As stated in County of Jasper v. Ballou, 103 U. S. 745, 753, 26 L. Ed. 422, in reference to a like transaction, "the issue of the funding bonds did not increase the aggregate of the indebtedness of the corporation, but only changed its form." The constitutional limitation relates solely to the creation of indebtedness thereafter, and neither authorizes repudiation, nor affects the making of terms for payment of existing legal liabilities. The funding of such liabilities, therefore, authorized by statute and vote, was unaffected by the limitation, and the fact alone that the issue of funding bonds thereupon exceeded that limit neither implies nor amounts to violation of the constitutional provision. County of Jasper v. Ballou, supra; City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 278, 30 C. C. A. 38, 45, 49 L. R. A. 534, and cases cited; Hughes County v. Livingston, 104 Fed. 306, 317, 43 C. C. A. 541. So, without impeachment of the recitals, that "binding, subsisting legal obligations of said county" were thereby funded, no infringement of the Constitution appears in this issue of bonds. Whether the validity of the obligations so funded is contestable for like cause or upon other alleged grounds, as against the defendant in error, remains to be considered.

2. Upon the conceded state of facts in reference to the original issue of bonds and various adjudications of liability thereunder, a funding arrangement of the outstanding obligations of the county was both needful and authorized by the above-mentioned statute. After years of litigation, in state and federal courts, with conflicting adjudications in the former as to the validity of that bond issue, the liability of the county was established in favor of the holders of a majority of such bonds, while other portions of the bonds so issued had been adjudged invalid and holders defeated of recovery; other large portions were in the hands of various holders unadjudicated as to such parties, when the funding issue was voted. Thus the occasion for an adjustment of the unpaid judgments against the county, and unsettled claims and differences in a funding arrangement, was clearly presented; and the issue of funding bonds thereupon was authorized by vote of the people, as required by the statute. The contention, therefore, that no funding arrangement was within the power of the municipality is plainly un-

tenable, for the reason that it ignores the effect of the judgments above mentioned in favor of the bondholders. It rests alone upon the proposition that the entire bond issue thereby funded was void, both (1) for insufficiency of the enabling act, under which the bonds were issued, as expressly determined in People ex rel. v. Hamill, 134 Ill. 666, 17 N. E. 799, 29 N. E. 280, and (2) for excess of the constitutional limit. The judgments referred to were conclusive against either of these grounds of defense in respect of the bonds involved therein— and of the validity of such bonds—under the elementary doctrine of res judicata (Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195; 9 Notes U. S. Rep. 93; 23 Cyc. 1215), and thus established an indebtedness for which funding bonds were authorized; excluding from the present view the judgment ultimately obtained in favor of the holders of the residue of unadjudicated bonds, which was entered subsequent to the vote for funding. It is further contended that indebtedness under judgments is not within the terms of the legislative provision for an issue of funding bonds, but such objection is clearly untenable, as it was expressly met and overruled in Stone v. City of Chicago, 207 Ill. 492, 69 N. E. 970; and other pertinent authorities of like effect do not require citation. Whatever defense was then available against the holders of the old bonds related only to those upon which no recovery had been adjudged; and (in so far as materiality may now appear) the record discloses that the first above-mentioned ground of defense was not only available in respect thereof, when the funding transaction was voted upon, but had repeatedly been upheld in adjudications. The funding arrangement, however, extended to a compromise of these outstanding bonds not adjudicated for or against the individual holders, together with the amounts allowed to bondholders who had recovered judgments; and this fact raises the crucial question: Are the funding bonds issued thereupon subject to either of the above-mentioned challenges, in the case at bar, because the outstanding bonds so included were impeachable when funded? The solution rests upon the force of the recitals in these bonds, and is free from doubt, as we believe, under the authorities.

The rule is well recognized that municipal bonds must contain recitals showing authority for their issuance to make them marketable, as no indebtedness can be contracted by the municipality, unless (1) the Legislature has granted power to that end, and (2) all contingencies are met, as provided by Constitution or statute for its exercise. Recitals are of no avail to cure the want of fundamental power to issue bonds, but they are needful and commonly made to save the purchaser from examination and proof in respect of the contingencies of fact upon which a grant of power was exercised; and upon this distinction in their legitimate office and bearing must their force be determined. When power appears, however, to issue bonds for the purpose stated, and defense is sought, through violation of Constitution or statute in its exercise—in exceeding the limit of indebtedness or like restrictions of the grant—such departure from the power has given rise to difficulty in ascertaining the true line of distinction and just effect of recitals in bonds so issued; and it may be conceded that the authorities have not been harmonious in stating

the rule applicable in such cases, particularly when a constitutional provision is violated. Thus, in the opinion cited for plaintiff in error, in Hedges v. Dixon County, 150 U. S. 182, 187, 14 Sup. Ct. 71, 37 L. Ed. 1044, it is remarked, in substance, on reference to the prior Lake County cases (130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060; 130 U. S. 674, 9 Sup. Ct. 654, 32 L. Ed. 1065; and 147 U. S. 230, 13 Sup. Ct. 318, 37 L. Ed. 145), that recitals in bonds may estop against denial of legislative authority, but no such estoppel can arise when a constitutional provision is violated. Nevertheless, later decisions of the Supreme Court have, as we believe, set aside the exception from the elementary doctrine of estoppel above indicated, and upheld and established the rule as equally applicable to recitals of fact, within the knowledge of the municipality, and necessarily committed to its proper officers to ascertain and certify, as to a constitutional limit of indebtedness or like restrictive provisions upon the exercise of the power. Gunnison County Commissioners v. Rollins, 173 U. S. 255, 263, 19 Sup. Ct. 390, 43 L. Ed. 689; and authorities there reviewed; Waite v. Santa Cruz, 184 U. S. 302, 320, 22 Sup. Ct. 327, 46 L. Ed. 552; and, in this court, Wesson v. Saline Co., 73 Fed. 917, 920, 20 C. C. A. 229, and Wesson v. Town of Mt. Vernon, 98 Fed. 804, 807, 39 C. C. A. 301; King v. City of Superior, 117 Fed. 113, 115, 54 C. C. A. 499. So the fact alone that defense is sought for violation of a constitutional provision, instead of a legislative requirement, in the issue of bonds, is insufficient, under these controlling authorities, to avoid such estoppel from recitals of fact thereupon in the bonds. It goes without saying that the Constitution is paramount in all its provisions, and the statutory grant, which is the direct source of municipal authority, must conform to such provisions; that Constitution and statute are alike binding upon the municipality and those claiming under it; that transactions on its part, in derogation of the authority thus conferred, are without validity as to parties or privies; and that the sovereign source of municipal power may, in clear terms, provide against recovery, through estoppel by recitals or otherwise, upon bonds so issued, even in the hands of the bona fide purchaser under such restraint of authority. But the present inquiry is not within either of these premises, and the defenses set up can be upheld only upon the broad ground that the nature of the alleged violation of Constitution and statute prevents estoppel by recitals in the bond, and that the bona fide purchaser was bound to take notice of the facts constituting the violation.

The statutory authority, as before mentioned, was to fund the indebtedness of the county, outstanding in bonds or other obligations, "which are the binding, subsisting legal obligations of such county," with new bonds to be issued by "the proper corporate authorities," when such arrangement was authorized by vote of the people. This power became operative for funding, as both of the conditions precedent were in existence—an indebtedness in legal obligations to be funded and an affirmative vote for funding. For exercise of the power the character and amount of the various obligations must be ascertained, and necessarily by the corporate authorities referred to,

in the absence of other provisions. Waite v. Santa Cruz, 184 U. S. 302, 320, 22 Sup. Ct. 327, 46 L. Ed. 552. In such case—as pertinently said in Dixon Co. v. Field, 111 U. S. 83, 93, 4 Sup. Ct. 315, 28 L. Ed. 360, and quoted with approval in Gunnison Co. Commissioners v. Rollins (page 264 of 173 U. S., page 390 of 19 Sup. Ct. [43 L. Ed. 689]), supra—"the meaning of the law granting power to issue the bonds is that they may be issued, not upon the existence of certain facts, to be ascertained and determined whenever disputed, but upon the ascertainment and determination of their existence, by the officers or body designated by law to issue the bonds upon such contingency"; and their determination and recital thereupon are "conclusive of the fact and binding upon the municipality." The county authorities determined the character and amount of legal obligations for this funding issue, their finding was ratified by the vote thereupon, and the bonds were issued with express recital of fact in conformity with such finding. If any portion of the original bonds so funded were open to defense for invalidity—either for want of competent statutory authority for the issuance, or for exceeding the constitutional limit, if the limitation were applicable under the vote for such issue—it was only the outstanding portion for which no judgment had then been recovered; and the fact that such questions were then involved in nowise appears from the recitals. That the purchaser was not bound to examine the records for such particulars, under the recitals, is settled (Evansville v. Dennett, 161 U. S. 434, 443, 16 Sup. Ct. 613, 40 L. Ed. 760; Waite v. Santa Cruz, 184 U. S. 302, 317, 22 Sup. Ct. 327, 46 L. Ed. 552); and, under the above-stated doctrine applicable to such recitals, we believe it to be equally well settled that this purchaser was entitled to assume that the county authorities performed their duty, ascertained all the facts upon which liability depended—necessarily including the inquiries of fact upon which the applicability of the constitutional limitation depended—and that no obligations entered into the funding issue which were not so established as a valid indebtedness. The testimony is clear and undisputed that he purchased the bonds in suit, for value, relying upon their recitals, and with no information to raise doubt of their truthfulness.

We are satisfied that the recitals were within the authority conferred upon the county officers, who executed and issued the bonds, and are sufficient to support the direction of verdict and judgment for recovery. The judgment, accordingly, is affirmed.